**In re Robert Patrick MICK, Debtor**

**Robert Patrick Mick, Appellant, Cross–Appellee**

v.

**Gary Bricker and Sharon Bricker, Raymond J. Obuchowski, Chapter 7 Trustee, Appellees, Cross–Appellants**

**No. 1:03–cv–300.**

United States District Court, D. Vermont.

Feb. 23, 2004.

---

Jess Thomas Schwidde, Glinka & Schwidde, Rutland, VT, for appellant.

John Joseph Kennelly, Pratt, Vreeland, Kennelly, Martin & White, Ltd., Rutland, VT, for appellees.

Kevin Jay Purcell, Office of U.S. Trustee, Albany, NY, for U.S. Trustee.

Jennifer R. Emens–Butler, Obuchowski & Emens–Butler, Bethel, VT, for trustee.

## OPINION AND ORDER

MURTHA, District Judge.

This is an appeal from a decision of the Bankruptcy Court denying discharge. Both parties challenge portions of the decision. For the reasons described below, the Bankruptcy Court's decision is AFFIRMED.

## BACKGROUND

Gary Bricker and Robert Patrick Mick were business partners who owned and operated several construction management and real estate development companies. Their business relationship, however, became acrimonious, and in 2001 deteriorated resulting in multiple lawsuits.

In 2001, they reached a settlement agreement, under which Mick was to purchase Bricker's interests in their jointly-owned companies. Mick, however, breached this settlement agreement, prompting Bricker to obtain an attachment order in Connecticut. Subsequent to the attachment order, Mick filed for chapter 7 bankruptcy.

Raymond J. Obuchowski was appointed trustee and together with Gary and Susan

Bricker (collectively, "Plaintiffs") initiated an adversary proceeding objecting to the discharge of Mick ("Defendant") alleging: (1) Defendant transferred or concealed contract rights warranting denial of discharge under 11 U.S.C. § 727(a)(2)(A); and (2) Defendant knowingly and fraudulently failed to include on his schedules amounts due to him from his employer warranting a denial of discharge under 11 U.S.C. § 727(a)(4)(A). On July 14, 2003, the Bankruptcy Court held a one-day bench trial, and on September 24, 2003, the court issued a Memorandum of Decision ("Bankr.Decision").

During the course of litigation, Defendant amended four times various omissions and errors on his bankruptcy schedules, and the Bankruptcy Court concluded such amendments constituted "defensive maneuvers," which, in part, mandated a denial of discharge under § 727(a)(4)(A). More specifically, the court ruled that errors and omissions in answers to Questions 1 and 18 on Defendant's Statement of Financial Affairs ("SOFA") warranted a denial of discharge. The Bankruptcy Court, however, declined to deny discharge under § 727(a)(2)(A).

Both parties now appeal: Defendant challenges the denial under § 727(a)(4)(A), while Plaintiffs argue it was error for the court to decline denial of discharge under § 727(a)(2)(A).

## DISCUSSION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 158(a) which gives Federal District Courts authority to hear appeals from final judgments, orders and decrees of bankruptcy judges entered in "core proceedings" involving purely bankruptcy matters. *See, e.g., Riendeau v. Canney (In re Riendeau)*, 293 B.R. 832, 835 (D.Vt.2002).

This Court reviews the Bankruptcy Court's findings of fact under a "clearly erroneous" standard, *In re United States Lines, Inc. v. American Steamship Owners (In re United States Lines)*, 197 F.3d 631, 640–41 (2d Cir.1999), and "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." FED. R. BANKR. P. 8013. The Bankruptcy Court's conclusions of law are reviewed de novo, as are mixed questions of fact and law. *See* 197 F.3d at 640–41.

I. *Plaintiffs' § 727(a)(4)(A) Claim*

A. *Implied Consent*

Defendant argues the Bankruptcy Court erred in its analysis of Plaintiffs' § 727(a)(4)(A) claim by improperly analyzing three allegedly false statements which were not pled in the Complaint. (*See* Paper 10 at 8) More specifically, Defendant challenges the bankruptcy court's determination that he impliedly consented to try these unpled allegations.

According to FED. R. BANKR. P. 7015(b), "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Thus, the relevant determination is whether Defendant impliedly consented. Usually, "consent may be implied from failure to object at trial to the introduction of evidence relevant to the unpled issue." *United States v. Certain Real Prop. & Premises*, 945 F.2d 1252, 1257 (2d Cir.1991). Whether a party has implicitly consented depends on whether the party recognized that the issue had entered the case at trial. *Id.*

Defendant's inclusion of the unpled allegations in his Proposed Findings of Fact and Memorandum of Law strongly evidences a recognition that the issues had entered the case at trial, and there is no

indication he was prejudiced by lack of opportunity to prepare to meet the unpled issue. (*See* Def.'s Proposed Findings at 18–19); *e.g., In re Joint E. & S. Dists. Asbestos Litig.,* 124 F.R.D. 538, 540 (S.D.N.Y.1989) (finding implied consent, in part, because party had opportunity to prepare for unpled issue and was therefore not prejudiced). Defendant's inclusion of the unpled issues in his Proposed Findings, combined with his lack of objection at trial, convinces the Court Defendant impliedly consented.

### B. *Burden of Proof*

Defendant next argues the Bankruptcy Court misapplied the burden of proof. (*See* Paper 10 at 4) To support this contention, Defendant cites one sentence in the Bankruptcy Court's decision:

> Once a creditor meets its burden of proof by producing persuasive evidence of a false statement, the burden of production shifts to the debtor "to come forward with some credible explanation" for the false statement in his schedules. *In re Brenes,* 261 B.R. at 334.

(*See id.* at 4, citing Mem. of Decision at 10) From this, Defendant argues the court failed to require the Plaintiffs to demonstrate other necessary elements before shifting the burden of production. (*See* Paper 10 at 4) When read in isolation, the sentence relied upon by Defendant suggests the court erroneously required only one element in the § 727(a)(4)(A) prima facie case. Defendant, however, ignores a longer prior passage in which the court correctly identifies five elements of a § 727(a)(4)(A) claim. (*See* Bankr.Decision at 9) Moreover, before the lone sentence upon which Defendant relies, the court clearly states Plaintiffs must prove all elements by a preponderance of the evidence. (*See id.*) After reviewing the Bankruptcy

Court's decision, the Court is satisfied the burden of proof was not misapplied.

### C. *SOFA Question 1*

The Bankruptcy Court ruled Defendant's inaccuracies in SOFA Question 1 regarding his income earned from AC–Vt from January 1, 2002 through April 15, 2002 warranted a denial of discharge under § 727(a)(4)(A). (*See* Bankr.Decision at 10–11) On appeal, Defendant argues (1) the statement was not false; (2) his inaccuracies did not evidence a reckless disregard for truth; (3) the falsity was not material; and (4) his explanation of claimed error was credible. (*See* Paper 10 at 14–17)

#### 1. *Falsity*

■ Defendant claims the Bankruptcy Court cannot make a finding of falsity without ascertaining the true amount Defendant earned. (*See* Paper 10 at 15) This argument fails because the reason the court did not ascertain the true amount of Defendant's earnings is because he provided several conflicting answers (*See* Bankr.Decision at 5, ¶ 17). Moreover, the court found the final amount claimed by Defendant to be contradicted by the summary of AC–Vt's payroll account. (*See id.* at 6, ¶ 20; *id.* at 10, citing Ex. 9) Regardless of how steadfast Defendant was when he "stood by his final answer" (Paper 10 at 15), Defendant's disparate answers and the evidence contradicting his final answer all support the Bankruptcy Court's determination of falsity.

#### 2. *Reckless Disregard for the Truth*

■ The Bankruptcy Court ruled Defendant's numerous amendments to SOFA Question 1 evidenced a reckless disregard for the truth. (*See* Mem. of Decision at 10–11) Defendant's original answer to SOFA Question 1 indicated AC–Vt paid him $3,500, and this amount was later

amended twice with Defendant finally claiming payment of $12,250. (See id. at 5) In particular, the court stated "the fact [Defendant] changed this amount so many times and still did not provide a clear, correct response is disturbing primarily because it reflects that he filed the amendments as a defensive maneuver and that he failed to take the oath of honesty seriously." (Id. at 10)

■ The fraudulent intent necessary to sustain a § 727(a)(4)(A) claim may be satisfied by showing a reckless indifference to the truth. See Dubrowsky v. Perlbinder (In re Dubrowsky), 244 B.R. 560, 572 (E.D.N.Y.2000). Defendant argues his multiple amendments cannot support a finding of such reckless disregard, and he cites In re French for the proposition that a debtor has an absolute right to amend his schedules, and no negative inference may be made from the occurrence of amendments. (See Paper 10 at 16–17) Defendant ignores, however, the more relevant passage immediately following, in which the court states "when a debtor files schedules that are not clear ... and are amended multiple times, a reasonable person would have cause to question whether the original schedules were merely prepared sloppily or were calculated to obfuscate the truth." Suggitt v. French (In re French), 2003 WL 21288644, *2 (Bankr. D.Vt.2003) (citing In re Ptasinski, 290 B.R. 16, 26–27 (Bankr.W.D.N.Y.2003)).

■ In this case, the court found the series of amendments to be "defensive maneuvers" designed to obfuscate the truth rather than sloppy accounting. (See Bankr.Decision at 10) This result is consistent with authority that holds a series or pattern of errors can give rise to an inference of intent to deceive, see, e.g., Beaubouef v. Beaubouef (In re Beaubouef), 966 F.2d 174, 178 (5th Cir.1992). The Bankruptcy Court did not err when it ruled

Defendant's pattern of errors and amendments evidences a reckless disregard for the truth.

### 3. Materiality

■ Defendant challenges the Bankruptcy Court's finding that the inaccuracies evidencing a reckless disregard for the truth are material under § 727(a)(4)(A). A statement is said to be material "if it is pertinent to the discovery of assets." Casa Inv. Co. v. Brenes (In re Brenes), 261 B.R. 322, 334 (Bankr.D.Conn. 2001). A material matter is "one bearing a relationship to the debtor's business transactions or estate or which lead to the discovery of assets, business dealings, or existence or disposition of property." Walters v. Sawyer (In re Sawyer), 130 B.R. 384, 394 (Bankr.E.D.N.Y.1991). Here, the Bankruptcy Court ruled the statement regarding the monies AC–Vt paid to Defendant "could have led to the discovery of assets or the existence or the disposition of property." (Bankr.Decision at 11)

The Court finds the false statements to be material. Any monies owed Defendant by AC–Vt constitute an asset the Trustee could collect, and the "defensive" amendments interposed by Defendant prevented determination of this asset.

### 4. Lack of Credible Explanation

■ Lastly, the Court finds no error in the Bankruptcy Court's determination that Defendant failed to provide a credible explanation for his series of errors. The court supported its conclusion that Defendant lacked credibility because he not only ran AC–Vt but also managed AC–Vt's finances and signed the majority of its checks, including payroll checks. (See Bankr.Decision at 5–6, 11) The Bankruptcy Court properly assessed Defendant's explanation in light of his business experi-

ence. *See Montey Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 114 (Bankr. D.Conn.1993) (holding that debtor's education and business experience may be considered when evaluating debtor's knowledge of false statement).

### D. *SOFA Question 18*

The Bankruptcy Court ruled Defendant's false statement in SOFA Question 18 omitting his role as managing executive of AC–Vt warranted a denial of discharge under § 727(a)(4)(A). (*See* Bankr.Decision at 11–12) On appeal, Defendant argues (1) his omission did not evidence a reckless disregard for the truth and (2) the omission was not material. (*See* Paper 10 at 11–14)

#### 1. *Reckless Disregard for the Truth*

▮ After weighing the evidence and assessing credibility of the witnesses, the bankruptcy court concluded Defendant "should have known to include AC–Vt on his SOFA as an entity in which he held a management position ... his failure to do so was at best a reckless disregard for the truth and at worst an intentional fraud." (Bankr.Decision at 11–12) This Court finds no error in this determination, particularly because, as the Bankruptcy Court noted, Defendant himself was found to be a "savvy businessman" who created AC–Vt "to thwart [his] creditors." (*Id.*) Moreover, Defendant signed an employment agreement that clearly named him as a managing executive, and at trial he identified himself in a similar manner. These facts support a finding of reckless disregard for the truth.

#### 2. *Materiality*

▮ The Bankruptcy Court ruled material the omission in SOFA Question 18 because the information "illuminates the [Defendant's] business transactions." (*Id.*

at 12) Although the Bankruptcy Court does not detail how the information "illuminates" the Defendant's transactions so as to be material, this Court is satisfied the court below concluded correctly. As mentioned earlier, a material matter is "one bearing a relationship to the debtor's business transactions or estate or which lead to the discovery of assets, business dealings, or existence of disposition of property." *In re Sawyer*, 130 B.R. at 394. The managing executive role in AC–Vt certainly bears "a relationship to the debtor's business transactions," and disclosure of such an executive role could conceivably lead to the discovery of assets.

▮ Defendant argues the omission of his role in AC–Vt is not material because the disclosure of the omitted information did not ultimately lead to the discovery of assets. (*See* Paper 12 at 4) A finding of materiality, however, does not necessarily require that creditors suffer actual prejudice. *See. e.g., Rosenbaum v. Kilson (In re Kilson)*, 83 B.R. 198, 204 (Bankr. D.Conn.1988). Indeed, "it is irrelevant whether the omitted information would have lead [sic] to the location of assets or whether creditors were harmed." *Corning Vitro Corp. v. Shah (In re Shah)*, 169 B.R. 17, 21 (Bankr.E.D.N.Y.1994) (citing *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir.1974)). Instead, materiality goes to whether the omitted information is pertinent to discovering what, if any, assets Defendant may have had. *See id.* Therefore, omission of Defendant's role as managing executive in AC–Vt, whether or not it led to discovery of assets, warrants a denial of discharge.

### II. *Plaintiffs' § 727(a)(2)(A) Claim*

▮ Plaintiffs argue the Bankruptcy Court erred by not also denying discharge under § 727(a)(2)(A) because Defendant allegedly transferred or concealed certain

oral personal service contract rights with Yvon Construction Company ("YCC") within one year of filing his petition. (*See* Paper 11, pp. 22–25)

To succeed on a § 727(a)(2)(A) claim, a plaintiff must demonstrate, inter alia, the debtor transferred, removed, destroyed, or concealed the debtor's property with fraudulent intent. *See* 11 U.S.C. § 727(a)(2)(A) (2003); *see also, Paine-webber v. Gollomp (In re Gollomp)*, 198 B.R. 433, 439 (S.D.N.Y.1996). Not only did the Bankruptcy Court determine Defendant lacked the requisite intent; more importantly, it concluded Defendant did not have an interest in the property allegedly transferred. (*See* Bankr.Decision at 13)

This Court finds no error in the Bankruptcy Court's determination that Defendant credibly explained his actions so as to demonstrate lack of fraudulent intent. Furthermore, this Court agrees any contract right that may have existed would not be Defendant's individual property interest, but would instead belong to Defendant's employer, AC–Vt. Because the property allegedly transferred did not belong to Defendant, the Bankruptcy Court correctly concluded the § 727(a)(2)(A) claim fails. *Cf., BPS Guard Servs. v. Woodhead (In re Woodhead)*, 172 B.R. 628, 632–33 (Bankr.D.Neb.1994) (holding that § 727(a)(2)(A) applies only to transfers of property in which debtor possesses a direct proprietary interest and does not extend to derivative interests of debtor in a business entity).

### CONCLUSION

For the reasons discussed above, the Bankruptcy Court's ruling is AFFIRMED.

SO ORDERED.